FRANKLIN COUNTY, JANUARY TERM, 1828.

*Darius S. Barlow* vs. *David Read.*

That an action on book account will not lie where there is a contract of sale but not completed by actual delivery.

THIS was an action upon book account, and the question before the Court arose upon the report of auditors and exceptions to their report. The report stated, " That sometime in the fall of " 1823, the plaintiff, being about to leave *Fairfield*, where he then " resided, and where he was following the profession of the law, had " some conversation with the defendant, (then residing, and fol- " lowing the profession of the law in said town,) about the sale of " his, the plaintiff's library, consisting] of the Books contained in " the plaintiff's account hereunto annexed, viz : 4 vols. *Dallas'* " *Reports*, 3 do. *Baylies' Index*, 2 do. *Day's Reports*, 5 do. *U. S.* " *Laws*, 2 do. *Cowper's Reports*, 5 do. *East. Rep.* 1 do. *Powell on* " *Mortgages*, 1 do. *Peak's Evidence*, 1 do. *Lawe's Pleadings*, 1 do. " *Powell on Contracts*, 1 do. *Jones on Bailment*, 4 do. *Blackstone's* " *Commentaries.* A part or all of which were then taken by the " parties and packed up in a chest of the plaintiff, in the store of *B.* " *Barlow & Son,* where the plaintiff then had his office. The " defendant said he should be glad to make a purchase of said " books, if his health in the spring should be such as would enable " him to continue his profession. The plaintiff about this time or " shortly after left *Fairfield* and went to *Burlington*, where he " continued principally to reside until the spring of 1824. At the " time said Books were packed up, or shortly after, a part of them, " to wit, *Baylies' Index*, and one or two volumes of *Dallas' Re-* " *ports*, were carried to the office of the defendant, but by whom, " or on what account, does not appear ; but not however with any " view to a purchase of said books. About the first of March, " 1824, the parties had a further conversation as to the sale of " said Books : the defendant concluded to purchase if the price " and mode of payment could be agreed upon. This was at the " store aforesaid. The parties then went to the office of the " defendant, a short distance from the store, to ascertain the " marked prices of the books that were there. While at the of- " fice, after some preliminary conversation, we find that *Read* of-

N

Franklin, Jan. 1828.   " fered to purchase of *Barlow* his books and
*Barlow* vs. *Read.*   " his right of practising in *Fairfield*, for the fu-
" ture, (which *Barlow* was to relinquish) and to pay *Barlow* there-
" for the sum of one hundred dollars, part of which was to be paid
" in a horse which the said *Read* then owned and was known by
" both parties.   The horse was then at *Cambridge*, and unless
" the parties should otherwise agree, said horse was to be apprais-
" ed by *Joseph Soule* of said *Fairfield*, and what ever sum said
" horse should fall short of paying said sum of one hundred dol-
" lars, was to be paid in grain in a reasonable time therafter.   To
" which proposal the said *Read* and *Barlow* did agree, and it
" was then proposed by said *Barlow* that *Read* should keep the
" books then in his office, and should receive the books which
" were at the store of *B. Barlow & Son* at said store ; to which
" *Read* assented.   But it does not appear that *Read* ever saw
" the Books at the store after they were packed up by the parties
" in the chest as aforesaid ; and we find that *Barlow* never practised
" law in *Fairfield* after said contract.   About eight or ten days af-
" ter this agreement the defendant sent to *Cambridge* after said
" horse, and shortly after it was brought to *Fairfield* the said de-
" fendant called at the store of *B. Barlow & Son*, where the
" plaintiff then was, and informed the plaintiff he was then ready
" to deliver the horse. *Barlow* said he could not attend to it that
" day, as he was going to *St. Albans*.   It appeared that he went
" to *St. Albans* that day, and soon after returning was confined to
" the house by sickness.   He remained sick and was confined a
" considerable time.   About five weeks after the offer to deliver
" the horse, and soon after the recovery of *Barlow*, he called on
" *Read*, and requested him to deliver the horse in pursuance of
" said contract, which *Read* refused to do, saying that he did not
" want the books : upon which refusal this suit was immediately
" brought.   The next day after the commencement of the suit,
" *Read* carried the books, then in his office to the store of *B. Bar-*
" *low & Son*, and delivered the same to the father of the plaintiff.
" From all which facts the auditors decide that the action on
" book account is not sustained, and that there is nothing due from
" the defendant to the plaintiff, to balance book accounts between
" them , which is respectfully submitted by

    JOEL BARBER Jr, ⎫
    S. S. BROWN,  ⎬ *Auditors.*"
    J. W. SHELDON, ⎭

To the acceptance of the report the plain- { Franklin, Jan. 1828. tiff objected. 1. Because from the finding } Barlow vs. Read. of the facts there appears to have been a contract of sale of said books contained in the plaintiff's account, and that part of said books were delivered to the defendant at his office, and the remainder the defendant agreed to take at the store of *B. Barlow & Son* where they were, and ever since have been, at the controul of *Read*—that this amounted to a sale and delivery, and that the action of book account well lies, and that said report ought to have been for the plaintiff to recover said sum of one hundred dollars and his cost.

The plaintiff's counsel contended, That from the facts reported, the sale was complete, and that the action on book was a proper remedy for the purchase money.

The counsel for the defendant contended, That from the facts found by the auditors no action of any sort could be sustained, inasmuch as there was no delivery nor *earnest money* paid, nor time of delivery or payment agreed upon.—*2 Bla. Com.* 447.—*Long on Sales*, 114.—*1 Com. on Con.* 15.—*Dyer's Rep.* 30.—*Noy's Max.* 144.—*15 Johns.* 349, *McDonald* vs. *Hewet.*—*13 Johns.* 434.—*1 Salk.* 113-14. If any action could be maintained upon the contract, it is contended that an action on book account cannot be supported—because there was no delivery of the articles charged.—*1 Aik. Rep.* 145, *Read* vs. *Barlow*—*Sw. Ev.* 83.— *1 Sw. Dig.* 583, 729.—*2 H.Bla. Rep.* 316, *Goodall* vs. *Skelton.* Again, if it should be contended that there was a delivery of *Baylies' Index* and *Dallas' Reports*, still it is contended that no action can be maintained without a delivery of the whole, as it was one entire contract for the whole of the books charged in the plaintiff's account.—*Long on Sales*, 108.—*6 East*, 614.—*5 Bos. & Pul.* 61, *Waddington* vs. *Oliver.* It is further contended, that if there was any contract made between the parties, it was an *entire* contract, as well for the books, as in consideration that the plaintiff was to quit the practice of law in the town of *Fairfield*; and the plaintiff cannot separate the contract, and charge the books which amounted to but one part of the consideration, at the full amount of the consideration agreed upon—viz : $ 100.— *8 Johns.* 195, *Crawford, Ex.* vs. *Morrell.*—*1 Lord Ray.* 360—

Franklin, Jan. 1828.

Barlow vs. Read.
1 *T.R.* 240.—1 *Camp. N. P.* 361,471.—*Long on Sales,* 108.—5 *Bos. & Pull.* 61, *Wadington* vs. *Oliver.*—*Cro. Eliz.* 79.—*Sw. Dig.* 685.—It is further contended, if there ever was a contract it was cancelled on the part of the plaintiff at the time the defendant offered to fulfil on his part by offering to deliver the horse, and which was refused by the plaintiff.—*Vide Report of Auditors.*—7 *T. R.* 181, 125.— 4 *Wheat.* 225. It is further contended, that the question has already been decided by this court as to the delivery, as the evidence to that point is the same as reported by a former auditor, on which this court have once adjudicated. 1 *Aik. R.* 145, *Read* vs. *Barlow.* It is lastly contended, that if there was any agreement of the parties in relation to the articles charged, it was a special one, not only as to the price but as to the mode of payment, (i. e.) in a particular horse to be appraised by a person agreed upon, and in grain.—1 *Aik. R. Read* vs. *Barlow.* In which case also no action on book account can be sustained.—1 *Aik. R.* 73, *Slason* vs. *Davis et al.*—*Id.* 358—1 *Con. Rep.* 75.—*Sw. Ev.* 84.— *Kirby's Rep.* 289.—2 *Root,* 130.—12 *Johns.* 274.—*Raymond et al.* vs. *Barnard.*—18 *Johns.* 456, *Robertson* vs. *Lynch.*—1 *Doug.* 23.

The plaintiff's counsel in reply attempted to obviate the difficulties urged by the defendant's counsel, but their argument was not retained in writing.

HUTCHINSON, J. delivered the opinion of the court, as follows: This cause was decided two years ago, upon a writ of error, and the judgment reported in 1 *Aikens' R.* 145. The court then decided that, upon the facts which then appeared in the report of the auditors, the book account action would not lie. It appeared that the dispute was upon matter which rested in contract merely, and the books contracted about had not passed into the actual possession of the defendant *Read.* The cause having been again sent to auditors, they have returned their report to this court in favor of the defendant, and have exhibited, in support of their report, a full statement of the facts in the case as proved before them, and these facts correspond, in every material part, with the facts upon which the same cause was decided by this court as reported by Judge *Aikens.*

This report of the auditors corresponding with the decision of this court, must be accepted.

Franklin, Jan. 1828.<br>Read vs. Barlow.

*Aldis* and *Hunt*, for the plaintiff.

*Smith* and *Read*, for the defendant.